In re Dissolution of the Springfield Savings Society.*

[Cite as In re Dissolution of Springfield Savings Soc., 12 Ohio App. 2d 120.]

---

*For opinions in Common Pleas Court, see 12 Ohio Misc. 51 and 73.

(No. 629—Decided June 23, 1966.)

*Messrs. Dunbar, Kienzle & Murphey* and *Messrs. Cole, Cole & Harmon*, for appellee Springfield Savings Society.
*Mr. Charles E. Carter*, for appellant city of Springfield.

SHERER, P. J.   This matter is pending in this court on an appeal on questions of law from an order of the Common Pleas Court of Clark County in an action involving the dissolution of The Springfield Savings Society determining that appellant, the city of Springfield, was not entitled to participate in the distribution of its surplus assets.

The cause is before the court on motion of the appellee to dismiss the appeal for the reason that appellant has not filed its brief and assignments of error within the time provided by Rule VII of the Courts of Appeals or shown good cause for such failure, and for the reason that a bill of exceptions is required to portray the claimed error, and none has been filed.   Appellee has moved also to strike appellant's brief.   Appellant filed a brief while this matter was pending on an appeal on questions of law and fact but has filed no additional brief since such appeal was reduced to an appeal on questions of law only.   Such brief will be considered by the court as a brief and assignments of error on the appeal on questions of law only on the merits and appellee's motions to strike this brief and to dismiss the appeal for failure to file brief and assignments of error will be overruled.   The record discloses that no bill of exceptions has been filed herein, and the court will proceed to consider the appeal in the light of the record before us in the absence of a bill of exceptions.

The trustees of appellee savings society elected to dissolve the Society voluntarily as provided in Section 1702.47 (C) (3) of the Revised Code.   Neither the law nor the regulations of the Society provides a method for, or designates the persons who shall be entitled to receive, a distribution of surplus assets upon dissolution of the Society.   Under such circumstances, Section 1702.49 (D) (3) of the Revised Code authorizes the trustees to

determine and adopt a plan for the distribution of such assets. Item (1) of the plan submitted to the court enumerates the classes of accounts, the owners of which are to be considered "Depositors." Among these are holders of certificates of deposit during the period from 10/29/64 to 2/9/65 and governmental authorities for whose account the society held money pursuant to the Uniform Depository Act of the state of Ohio continuously during such period.

Item (4) of the plan adopted by the trustees provides that such surplus shall be distributed as follows:

"(a) To and among such depositors as the court shall determine to be the beneficial owners of such surplus.

"(b) As between such depositors, such surplus is beneficially owned by each in the proportion which his deposit balance bears to the aggregate of the deposit balance of all depositors * * *.

"(c) Each depositor who is determined by the court to be a beneficial owner of the surplus shall be entitled to receive, subject to all the terms and provisions of the plan, at the dates of distribution determined in the manner hereinafter provided, cash in an amount equal to his proportionate share of surplus as determined in (b) above."

It is conceded in argument that appellant, the city of Springfield, is a "Depositor" as defined in the plan.

Supervisory power over the dissolution of the society is conferred upon the Common Pleas Court by Section 1702.49 (G) of the Revised Code, to be exercised as provided by Section 1702.50 of the Revised Code. The latter section empowers the Common Pleas Court to adjudicate the question at issue here.

The question to be determined is whether the Common Pleas Court erred in determining that appellant, the city of Springfield, was not the beneficial owner of a share in such surplus.

The Common Pleas Court approved the plan of distribution of the assets of the Society adopted by the trustees with certain exceptions spelled out in the judgment entry and determined that the only types of depositors entitled to share in the surplus fund of the Society are regular savings pass book depositors, school savings depositors and holders of certificates of de-

posit other than certificates of deposit issued to a governmental subdivision under the Uniform Depository Act of the state of Ohio. The court's opinion states that its decision is based upon the reasoning of the court in *In re Dissolution of Cleveland Savings Society*, 91 Ohio Law Abs. 289.

In that case, the plan adopted by the trustees for the distribution of the surplus defined "Depositors" as any person holding, or entitled to hold, a savings pass book issued by the Society pursuant to the rules and regulations relating to savings accounts promulgated by it and provided that: "3 Subject to the approval of the court in the Special Action hereinafter provided:

"(a) The Depositors, as of the close of business December 31, 1958, and no other persons, are the beneficial owners of, and are entitled to receive distribution of the Surplus of Society."

Involved in that action were the rights of depositors, former depositors, including corporate depositors, political subdivisions as owners of public deposits, persons owning or interested in Christmas Club accounts, escrow accounts, employees' United States Savings Bond Depositors, funds held by borrowers, borrowers' construction loan funds, hypothecated deposits on installment loans, outstanding certified checks and outstanding checks, official checks, other depositors or creditors of the Society, and other persons who might have rights upon the assets of the Society.

At pages 321, 322, the court said that:

"It appears to this court that for any persons, or classes of persons, to be entitled to share in the distribution of the remaining assets of Society, it would be incumbent on them to show in a solvent dissolution of this kind that not only a debtor-creditor relationship had been created, but also that an intangible ownership interest in the surplus had been created. Only those persons who indicated an intention to become regular savings depositors, who received savings passbooks as evidence of their property interest in Society, who were entitled to receive dividends rather than interest, or nothing, whose right to withdraw their funds was determined in accordance with the regulations and Rules Relating to Deposits (See Pet. Exr. 1-D), had intangible ownership interests in Society.

"Persons owning or interested in Christmas Club accounts, escrow accounts, Employees' United States Savings Bond deposits, funds held for borrowers, borrowers' construction loan funds, hypothecated deposits on installment loans, outstanding certified checks, outstanding checks, and official checks did not meet the requirements necessary to create an intangible ownership interest. Contracts with such persons were special contracts which distinguished them from regular savings depositors. They had no savings passbooks in Society, received no dividends from Society and their right, if any, to demand payment of such funds was determinable in accordance with their special contracts or general law and not governed in any way by the regulations and Rules Relating to Deposits. Therefore, this court finds that these persons, or classes of persons, shall not be entitled to share in the distribution of the remaining assets of petitioner.

"Public funds were held by Society for the account of certain municipal corporations pursuant to special written contracts which were governed by the provisions of the Uniform Depository Act of the state of Ohio. These contracts provided for the payment of a fixed rate of interest, the repayment of all money held, and were fully secured by obligations of the United States of America. In light of the distinctive nature of these deposits, as contrasted to the regular savings deposits in Society, this court finds that this class of depositors shall not be entitled to share in the distribution of the remaining assets of petitioner."

In *Society for Savings in the City of Cleveland* v. *Peck, Tax Commr.*, 161 Ohio St. 122, the court held that the depositors owned the capital, surplus, reserve fund and undivided profits of a Savings Society. The court noted that the same principle had been expressed by courts of other states in *Bank Commissioners* v. *Watertown Savings Bank*, 81 Conn. 261, 70 A. 1038; *Barrett* v. *Bloomfield Savings Institution*, 64 N. J. Eq. 425, 54 A. 543; *Huntington* v. *Savings Bank*, 96 U. S. 388, 24 L. Ed. 777; *Lewis, Admr.*, v. *Lynn Institution for Savings*, 148 Mass. 235, 19 N. E. 365, 12 Am. St. Rep. 535, 1 L. R. A. 785; *Cogswall* v. *Rockingham Ten Cents Savings Bank*, 59 N. H. 43; *Worcester County Inst. for Savings* v. *Worcester*, 10 Cushing (Mass.) 128; and *Providence Inst. for Savings* v. *Gardner*, 4 R. I. 484.

We must begin our consideration of the question at issue here, then, with the general proposition that ordinarily the depositors of the Springfield Savings Society, including all holders of certificates of deposit, own the beneficial interest in the surplus. In the case here, unlike in *In re Dissolution of Cleveland Savings Society*, 91 Ohio Law Abs. 289, the plan of distribution adopted by the trustees defined governmental authorities as depositors. Also, in that case, the trustees specified the type of depositors entitled to share in the distribution of the surplus. Here, the plan adopted by the trustees empowered the court to determine what depositors were the beneficial owners of the surplus. In the *Cleveland case*, the plan adopted by the trustees eliminated every depositor from participation in the surplus excepting the holders of savings pass books who received dividends rather than interest and whose right to withdraw their funds was determined in accordance with the regulations and rules relating to deposits. Here, the court determined that holders of certificates of deposit, other than governmental agencies, were beneficial owners of the surplus. The city of Springfield was denied the right to participate in the distribution of the surplus solely because the Society was required by Section 135.16 of the Revised Code to pledge security for the city's deposit.

The claim filed by the city of Springfield is predicated upon claimed deposits in the nature of a checking account, time certificates, active deposits (savings society), active deposits (commercial bank), project expenditure account (commercial bank), and project expenditure account (savings society). In the absence of a bill of exceptions or a finding by the court of appellant's ownership of such accounts, we know nothing about the nature of such accounts or if they exist, excepting that the petition herein states that appellant has deposits in the Society pursuant to the Uniform Depository Act, and the judgment entry states that holders of certificates of deposit, other than governmental subdivisions, shall share in the distribution of the surplus. We can assume, therefore, only that the city owns time certificates of deposit in some amount pursuant to the provisions of the Uniform Depository Act of the state of Ohio.

In the opinion of *Bank Commissioners* v. *Watertown Savings Bank*, 81 Conn. 261, 70 A. 1038, it is said at page 266 that:

"It is true that the profits or income of savings-banks are not all payable at the same time or in the same way, and that they may be held by the bank as a fund until they have reached a specified amount. This is for the sole purpose of protecting depositors against unforeseen contingencies. There is nothing in these statutes which militates against the general proposition that the income or profits of savings-banks belong to the depositors *and are a part of the deposits.* In the end, it is the general spirit and purpose of the charters of savings-banks and of the laws of this state, that depositors, or their representatives, are entitled to *all* the pecuniary benefits arising from the deposits, less the reasonable expenses that may be chargeable thereon." (Emphasis added.)

In *Barrett* v. *Bloomfield Savings Institution,* 64 N. J. Eq. 425, 54 A. 543, it is said on page 434 in the opinion, in quoting with approval from the opinion in *Hannon* v. *Williams,* 7 Stew Eq. 255:

" 'In a savings bank the depositors bear, in great degree, the same relation to each other and to the property of the bank as do the stockholders in other monetary institutions. To the corporation itself they occupy the double relation of stockholders and creditors. In prosperity they are the stockholders among whom the profits are divided. In case of insolvency they are the creditors, and usually the only creditors, among whom the remaining assets are to be distributed. * * *' "

The surplus here is the fruit of the deposits. It is a part of the deposits and belongs to the depositors just as an apple is a part of and belongs to the tree which brought it into being.

In *Lewis, Admr.,* v. *Lynn Institution for Savings,* 148 Mass. 235, 19 N. E. 365, 12 Am. St. Rep. 535, 1 L. R. A. 785, it is said at page 243 in the opinion that:

"* * * the fundamental idea has never been departed from, that all the funds and investments of a savings bank are held exclusively for the benefit and security of the depositor * * *."

We cannot conclude, as did the court below, that the Uniform Depository Act should operate to deprive governmental subdivisions of any benefit accruing to their deposits of public funds. A portion of the funds of the city of Springfield were

withheld by the Society to create the surplus for the benefit and security of all the depositors of the Society. Since the surplus was created for the benefit and security of the depositors, we see no reason to deprive the city of the benefits of the surplus because the state has required the pledge of securities for the added security of the city's deposits. This added protection afforded the public by the Uniform Depository Act in no way alters the status of the city's deposit. In *Eastman* v. *Ohio Mutual Savings & Loan Co.*, 20 Ohio Law Abs. 506, it was said that the fact that a deposit is secured by pledge of securities does not change the character of a deposit. The fact that security is given for a governmental subdivision's deposit is a fact to be considered only when the assets of the Society are insufficient to repay the deposits. The Common Pleas Court did not follow the holding in the *Cleveland case* that only owners of deposits evidenced by passbooks are entitled to share in the surplus. The court here allowed the holders of certificates of deposit other than governmental subdivisions to share in the surplus.

There may be some facts relative to the city's certificates of deposit which would distinguish them from other certificates of deposit and would support a conclusion that the city's certificates did not entitle it to participate in the surplus. Section 135.09 of the Revised Code provides that the appropriate board shall award the deposit to the financial institution offering to pay the highest rate of interest which can legally be paid. It may be that the city enjoyed a rate of return on its certificates of deposit in excess of the rate of return paid by the Society to other holders of certificates of deposit and of passbooks and of other deposits permitted to participate in the surplus as to warrant a finding that the city has enjoyed such special benefits beyond its contribution to the Society's surplus that it should not share therein because it is in a different class than other depositors. But, the court did not base its judgment on such distinction. The judgment, as shown by the court's opinion, was based solely upon the fact that the city's deposit was secured by pledge of securities.

In *Andrews* v. *Board of Liquor Control*, 164 Ohio St. 275, the court held that:

"3. It is an invariable rule that the court speaks only through its journal, and where its opinion and its journal are in conflict the latter controls and the former must be disregarded.

"4. However, where it is essential in the interest of justice for a reviewing court to ascertain the grounds upon which a judgment of a lower court is founded, and the judgment entry fails to disclose such grounds, resort may be had to the opinion of the lower court to ascertain those grounds."

At page 281 in the *Andrews* opinion, the court says that resort could be had to the opinion of the lower court to ascertain the grounds upon which a judgment is rendered where there is no conflict between the opinion and the judgment entry. There is no such conflict here and we have deemed it essential in the interests of justice to examine the opinion of the Common Pleas Court to ascertain the grounds upon which its judgment was founded.

We conclude that the Common Pleas Court erred in denying the city of Springfield a right to share in the surplus arising out of its ownership of certificates of deposit because such deposit was secured as required by the Uniform Depository Act of the state of Ohio.

The judgment of the Common Pleas Court will, therefore, be reversed and the cause will be remanded to that court for further proceedings according to law.

*Judgment reversed.*

CRAWFORD and KERNS, JJ., concur.